**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GEORGE THOMAS CROUSE,** : | **CIVIL ACTION NO. 1:07-CV-1219** |
| : | |
| **Plaintiff** : | **(Judge Conner)** |
| : | |
| **v.** : | |
| : | |
| **SOUTH LEBANON TOWNSHIP,** : | |
| **JAMES GROSS, and GALEN BOYD,** : | |
| : | |
| **Defendants** : | |

**MEMORANDUM**

Plaintiff George Thomas Crouse ("Crouse") brings this civil rights action

pursuant to 42 U.S.C. § 1983 against defendants South Lebanon Township, South

Lebanon police officer James Gross ("Gross"), and Galen Boyd ("Boyd"), Crouse's

former landlord. Crouse advances several contentions associated with his arrest

and three-month incarceration in March 2006. In addition, Crouse sets forth an

action for municipal liability, and seeks redress under state tort law. South

Lebanon Township and Gross have filed a motion for summary judgment on

Crouse's constitutional claims. (See Doc. 18.) For the reasons that follow, the

motion will be granted in part and denied in part.

**I.    Statement of Facts**[1]

This case arises from what was essentially a landlord-tenant dispute. Boyd

owns a large tract of land at 302 Iona Road in Lebanon, Pennsylvania. (Doc. 20 ¶ 1;

---

[1]In accordance with the standard of review for a motion for summary
judgment, the court will present the facts in the light most favorable to the plaintiff,
who is the nonmoving party. See infra Part II.

Doc. 22 ¶ 1.)  The property boasts several residential structures, a shop warehouse, barn, and a pole building.  (See Doc. 20 ¶ 2; Doc. 22 ¶ 2.)  In 2004, Boyd entered a verbal lease agreement with Crouse, under which Crouse became a commercial tenant of the shop warehouse in exchange for $500 in monthly rent or an equivalent value in physical labor.  (See Doc. 18, Ex. 2 at 69; Doc. 20 ¶ 5; Doc. 22 ¶ 5.)  Crouse used the warehouse space to operate an auto repair garage.  (See Doc. 18, Ex. 2 at 57-58.)  He also slept on a sofa in the shop several nights per week.  (See Doc. 18, Ex. 1 at 18; id., Ex. 2 at 67-68.)

In January 2006, the landlord-tenant relationship began to deteriorate.  (See Doc. 18, Ex. 1 at 41; id., Ex. 2 at 92, 204.)  Crouse alleges that Boyd began to harass him by, *inter alia*, removing Crouse's tools from the shop without permission, interfering with Crouse's telephone reception, informing Crouse's veterinarian that Crouse was a "drunkard," and half-seriously threatening Crouse with gun violence.[2] (See Doc. 18, Ex. 2 at 204-08.)  On February 15, 2006 Boyd served Crouse with a written notice of eviction, which read, in pertinent part:  "You are hereby banned from these premise[s] as of 4:00 p.m. on Feb. 15, 2006 and will not be allowed to return for any reason to the premise at [302] Iona Road."  (Doc. 18, Ex. 4.)  Boyd

---

[2] Crouse concedes that Boyd's threats of physical violence were merely manifestations of the latter "[b]lowing steam."  (Doc. 18, Ex. 2 at 209.)  Nonetheless, Crouse claims that he was "living in fear" of Boyd, that Boyd threatened to shoot him, and that Boyd menacingly explained to Crouse that "he ha[d] guns hidden throughout the warehouse that [he] use[d] to shoot raccoons."  (Id. at 208.)

also distributed a copy of the letter to the South Lebanon police department, where it was posted on a clipboard on the office wall.[3]  (Doc. 20 ¶ 16; Doc. 22 ¶ 16.)

Crouse did not vacate the property after receipt of the eviction letter, nor did he make any preparations to do so.  (See Doc. 18, Ex. 1 at 32.)  Instead, landlord and tenant commenced a three-week period of mutual, escalating harassment of one another.  Boyd accuses Crouse of "short[ing] out" his telephone lines; hot-wiring his electrical box; and stealing 115 quarters and an electric shaver from inside his home.  (See Doc. 18, Ex. 1 at 32-36.)  For his part, Crouse claims that Boyd interfered with his telephone lines; improperly deactivated his electricity; and parked large vehicles directly in front of the shop warehouse doors to block Crouse's ingress and egress.  (See Doc. 18, Ex. 2 at 99-101, 209-10.)  Boyd contacted the South Lebanon police "four or five times" during this three-week period, precipitating at least two site visits by South Lebanon police officers.  (See Doc. 18, Ex. 1 at 39-40, 47-48, 56; Doc. 21, Ex. 6.)  Officers encouraged Crouse and Boyd to "avoid each other until their civil actions are resolved,"[4] and Boyd alleges that on one occasion, the police drew a line on the property and ordered the two men to remain on their respective sides.  (See Doc. 18, Ex. 1 at 56, 86.)

---

[3] The South Lebanon police department retains a clipboard "that contains letters of notice against trespass" or other information of which officers need to be aware.  (Doc. 18, Ex. 6 at 24.)  All such information is submitted by municipal residents, and the clipboard is maintained by South Lebanon chief of police Michael Lesher.  (See Doc. 21, Ex. 5 at 10-11.)

[4] Although it is not clear from the record, the "civil action" referred to above was ostensibly one for Crouse's eviction.

On March 3, 2006, one of the residential buildings on Boyd's property unexpectedly caught fire. (Doc. 18, Ex. 1 at 56.) The unit occupied by Scott Oswald ("Oswald"), another of Boyd's tenants, was severely burned as a result. (See Doc. 18, Ex. 2 at 120.) Two days later, Oswald was attempting to vacate the burnt unit of his belongings and requested Crouse's assistance in moving his property. (Id.) When Crouse followed Oswald into his apartment, Boyd immediately contacted the South Lebanon police to complain that Crouse was trespassing. (Doc. 18, Ex. 1 at 61-62.)

Gross arrived approximately fifteen minutes later accompanied by an officer of the Cornwall Borough named Troxell. (Doc. 18, Ex. 2 at 124, 127; id., Ex. 5 at 14; Doc. 20 ¶ 23; Doc. 22 ¶ 23.) Boyd informed the officers that Crouse was inside Oswald's apartment, and that Crouse was "trespassing." (Doc. 18, Ex. 6 at 15.) Although Gross had never personally interacted with Crouse, he was familiar with the deteriorating landlord-tenant situation, as well as the eviction letter that Boyd had delivered to the police department and which was posted on the police department's clipboard. (See Doc. 18, Ex. 6 at 7-9, 43.)

As Gross entered Oswald's apartment to investigate, Crouse was descending the stairs holding a black plastic trash bag. (Id. at 18; Doc. 20 ¶¶ 25-26; Doc. 22 ¶¶ 25-26.) Gross asked Crouse what he was doing, prompting the latter to aver that he was "helping the subjects who had lived in the upstairs portion of the residence." (Doc. 18, Ex. 6 at 19.) Crouse further explained that Oswald requested his assistance and invited him into the apartment. (Doc. 18, Ex. 2 at 128, 130.) Oswald

4

was standing nearby and apparently confirmed that Crouse was present as an

invitee.[5]  (See id. at 130.)  Gross then queried whether Crouse was current on his

rent; Crouse replied that he was not, and Gross informed him that he was

trespassing.  (Doc. 20 ¶ 29; Doc. 22 ¶ 29; see Doc. 18, Ex. 2 at 129.)

At this point, Crouse became argumentative and the volume of his voice

increased.  He insisted that he was not trespassing.  (See Doc. 18, Ex. 2 at 128-29;

id., Ex. 6 at 26.)  Gross purportedly rejected this protest out of hand, stating, "you

know what, I'm tired of this, we are tired of coming here, someone is going to jail

and it's going to be you."[6]  (Doc. 18, Ex. 2 at 130.)  Crouse was subsequently arrested

_____

[5] Crouse submits a summary of an "interview" with Oswald, wherein Oswald
recounts his observations of the conversation that transpired in the stairwell.  (See
Doc. 21, Ex. 4.)  The summary, which appears to be written by a private
investigator, states that "Oswald went to that officer [Gross] and told him that he
(Oswald) had given Crouse permission to be in the house, that he had asked him for
help."  (Id. at 2.)  Oswald's signature appears on the final page of this summary,
underneath a statement that reads, "The above accurately summarizes my oral
statement."  (Id. at 3.)  Although the document is signed, it is not a sworn affidavit
or an unsworn declaration under penalty of perjury, see 28 U.S.C. § 1746 (allowing
unsworn declaration to be offered in lieu of affidavit when sworn "under penalty of
perjury").  Oswald's summary is therefore not compliant with Rule 56(e) of the
Federal Rules of Civil Procedure and, accordingly, the court is unable to credit the
factual assertions contained therein.
    While the court does not credit Oswald's purported recitation of events, the
parties do not sharply dispute the fact that Gross was informed of Crouse's invitee
status.  Crouse testified that he "was invited by Mr. Oswald" onto the property,
(Doc. 18, Ex. 2 at 128), and Gross also concedes that "somebody who was standing
nearby said that [Crouse] was helping them," (Doc. 18, Ex. 6 at 19).  Construing the
facts in the light most favorable to Crouse, it is sufficiently clear that Gross was in
receipt of information suggesting that Crouse was not trespassing, but was instead
present in Oswald's apartment by invitation.

[6] Whether Gross actually made such a statement is disputed.  (See Doc. 18,
Ex. 6 at 20.)

and charged with "felony three criminal trespass."[7]  (Doc. 20 ¶¶ 30-31; Doc. 22 ¶¶ 30-31; see Doc. 18, Ex. 6 at 32.)  He was arraigned, unable to post bail, and spent the following three months jailed in the Lebanon County Correctional Facility.  (See Doc. 18, Ex. 2 at 19-21, 140, 222.)  Crouse was thereafter released and the charges were dismissed by the district attorney.  (See id. at 149-50.)

Crouse commenced the instant suit on July 6, 2007, alleging violations of his constitutional rights under § 1983.  Specifically, Crouse contends that he was unlawfully arrested, falsely imprisoned, maliciously prosecuted, and deprived of procedural due process, all in contravention of § 1983.  He advances each of these claims against both South Lebanon Township and Gross.  In addition, Crouse maintains a state tort claim for intentional infliction of emotional distress against his former landlord, Boyd.  Defendants South Lebanon Township and Gross filed a motion for summary judgment on September 17, 2008, asserting that Crouse has failed to produce sufficient evidence to support his claims.  Gross also invokes the doctrine of qualified immunity as a shield from suit.  The parties have fully briefed these issues, which are now ripe for disposition.

## II.  **Standard of Review**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  The

---

[7] Criminal trespass is made unlawful pursuant to 18 PA. CONS. STAT. § 3503(a).

burden of proof is upon the nonmoving party to come forth with "affirmative

evidence, beyond the allegations of the pleadings," in support of its right to relief.

Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P.

56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence

must be adequate, as a matter of law, to sustain a judgment in favor of the

nonmovant on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57

(1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89

(1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause

of action proceed. Pappas, 331 F. Supp. 2d at 315.

## III.  Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a

means to redress violations of federal law by state officials. See 42 U.S.C. § 1983.

The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress . . . .

Id. Section 1983 is not a source of substantive rights, but merely a method to

vindicate violations of federal law committed by state actors. Kneipp v. Tedder, 95

F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under this section, the plaintiff

must show a deprivation of a "right secured by the Constitution and the laws of the

United States . . . by a person acting under color of state law." Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Satisfaction of these elements, however, does not guarantee recovery. Certain officials, including police officers and other state actors performing "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, --- U.S. ---, 129 S. Ct. 808, 815 (2009). This doctrine, known as "qualified immunity," provides not only a defense to liability, but "immunity from suit." Hunter v. Bryant, 502 U.S. 224, 227 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

Application of qualified immunity implicates two distinct inquiries. The first evaluates whether the defendant violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson, 129 S. Ct. 808; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). If the defendant did not commit a constitutional infraction, the court must dispose of the claim in defendant's favor. Saucier, 533 U.S. at 201. If the defendant committed a constitutional violation, the second inquiry assesses whether the right in question was "clearly established" at the time the defendant acted. Pearson, 129 S. Ct. at 815-16; Saucier, 533 U.S. 201-02. A right is "clearly established" if a reasonable state actor under the circumstances would have known that his or her conduct impinged upon constitutional mandates. Pearson, 129 S. Ct. at 815-16;

8

Williams, 455 F.3d at 191.  Hence, a defendant may not invoke qualified immunity if the defendant's conduct diverges from that of a reasonable state actor under the circumstances.  Williams, 455 F.3d at 191.  The court is not required to conduct these inquiries sequentially, Pearson, 129 S. Ct. at 820, and it may eschew difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were *clearly established* at the time the defendant acted, id.

Should the court choose to address the alleged constitutional violations, however, analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity.  See Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 838-41 (E.D. Pa. 2000); see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).").

Proceeding under the above principles, the court will consider each of Crouse's § 1983 claims against Gross to determine, first, whether he has offered prima facie evidence of his federal claims and, second, whether Gross enjoys qualified immunity on those claims for which Crouse has presented sufficient evidence.  Following this inquiry, the court will address the contentions Crouse lodges against South Lebanon Township pursuant to § 1983.

A. **Section 1983 Claims Against Gross**

1. **Prima Facie Evidence of Crouse's Claims**

Crouse argues that Gross's conduct caused him to be unlawfully arrested, falsely imprisoned, maliciously prosecuted, and deprived of procedural due process. The court will evaluate each of these claims in turn.

a. **Unlawful Arrest, False Imprisonment, and Malicious Prosecution**

Claims of unlawful arrest, false imprisonment, and malicious prosecution under the Fourth Amendment each require a plaintiff to show that he or she was arrested without probable cause. Groman v. Twp. of Manalapan, 47 F.3d 628, 634-35 (3d Cir. 1995); see also Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009); Berg v. County of Allegheny, 219 F.3d 261, 268-69 (3d Cir. 2000). Probable cause to arrest requires "proof of facts and circumstances that would convince a reasonable, honest" officer that the person arrested has committed a crime. Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993); see Wright v. City of Phila., 409 F.3d 595, 602 (3d Cir. 2007). Thus, "the constitutional validity of the arrest does not depend on whether the suspect actually committed any crime," but whether the police had probable cause to believe that the individual committed those crimes at the time of his or her arrest. Wright, 409 F.3d at 602; Groman, 47 F.3d at 634; see also Baker v. McCollan, 443 U.S. 137, 145 (1979) ("The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released.").

The appropriateness of an arrest in a given scenario necessarily turns on the nature of the crime in question. Wright, 409 F.3d at 602. In the instant matter, Crouse was arrested for felony three criminal trespass; the court's probable cause inquiry will therefore focus on the elements of this offense. Under Pennsylvania law, an individual commits criminal trespass when:

> knowing that he is not licensed or privileged to do so, he:
>
>> (i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; or
>>
>> (ii) breaks into any building or occupied structure or separately secured or occupied portion thereof.

18 PA. CONS. STAT. § 3503(a)(1). The Third Circuit Court of Appeals has explained that "probable cause exists for an arrest for criminal trespass [under this statute] when the facts and the circumstances are sufficient for a prudent person to believe that the suspect (1) entered or broke into a building or occupied structure, (2) knowing that she or he had no license to do so."[8] Wright, 409 F.3d at 603; see also McKenna v. Schauer, Civ. No. 1:CV-08-0682, 2009 WL 959869, at *3 (M.D. Pa. Apr. 6, 2009) (same).

Construing the facts in the light most favorable to Crouse, the court is unable to conclude that Gross possessed probable cause sufficient to effectuate the arrest.

---

[8] According to the Pennsylvania Supreme Court, the central distinction between criminal trespass and burglary is one of intent; proof of the former offense necessitates a showing of scienter, where proof of the latter crime does not. See Commonwealth v. Carter, 393 A.2d 660, 661 (Pa. 1977).

By Gross's own admission, he knew that Crouse and Boyd were embroiled in a long-running landlord-tenant dispute—one that had routinely required the intervention of law enforcement. (See Doc. 18, Ex. 6 at 7-9, 43.) Moreover, Gross was aware that Crouse, as a current tenant, had a general right to be present upon at least a portion of Boyd's property, and that Boyd nonetheless considered Crouse a trespasser.[9] (See id.) Thus, although Boyd informed Gross that Crouse was trespassing, this characterization should not have held dispositive sway in Gross's assessment of the situation, especially in light of the countervailing contentions of both Crouse and Oswald.

The evidence suggests that when Gross entered Oswald's apartment, Oswald explained that Crouse was present as the tenant's invitee. (See Doc. 18, Ex. 2 at 128; id., Ex. 6 at 19.) Crouse confirmed that this was his understanding of the situation, as well, when he told Gross that "he [Crouse] was requested to be there by one of the upstairs tenants." (Doc. 18, Ex. 6 at 26.) At the very least, Crouse believed his presence inside Oswald's apartment was justified. Crouse articulated his belief to Gross, and given the totality of the evidence, the belief was not unreasonable. The trier of fact may therefore conclude that Gross was without probable cause to arrest Crouse for criminal trespass—a crime which requires presence on a property by one that knows he has no right to be there. See

---

[9] Gross testified during his deposition that he was aware of both the dispute and the frequency with which officers had been dispatched to 302 Iona Road. (See Doc. 18, Ex. 6 at 7-9, 43.)

Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998) (holding that "probable cause in a section 1983 damage suit is [typically a question] for the jury").

Because there is an unresolved dispute of fact concerning the existence of probable cause, Crouse's claim for false imprisonment must also proceed to the jury for resolution. A claim for false imprisonment that is rooted in § 1983 derives from the Fourth Amendment's prohibition against unreasonable seizures. See Groman, 47 F.3d at 636; Kokinda v. Breiner, 557 F. Supp. 2d 581, 592 (M.D. Pa. 2008). When law enforcement officers lack probable cause to make an arrest, "the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." Groman, 47 F.3d at 636; see also Kokinda, 557 F. Supp. 2d at 592. For the reasons discussed above, the court finds that a reasonable jury could conclude that Gross was without probable cause to arrest Crouse for criminal trespass. Consequently, Crouse's detention subsequent to the arrest is potentially actionable, and Crouse has succeeded in stating a prima facie case under § 1983.

The probable cause inquiry is also the dispositive element in Crouse's malicious prosecution claim. A cause of action for malicious prosecution requires a plaintiff to demonstrate that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Kossler, 564 F.3d at 186; Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir.

13

2007). To establish his prima facie case, Crouse must establish each of these factors by a preponderance of the evidence. Kossler, 564 F.3d at 186. For purposes of the instant motion, defendants concede that each of the factors other than probable cause is present; as the court has explained, supra, a reasonable jury may conclude that Gross lacked probable cause with which to arrest Crouse. Thus, Crouse has made a prima facie showing on his claim for malicious prosecution.

**b.    Procedural Due Process**

To prevail on a procedural due process claim, a plaintiff must demonstrate that a liberty or property interest was taken in a procedurally deficient manner. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71 (1972); Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). In the instant case, Crouse alleges that he was improperly evicted from his property "without notice or an opportunity to be heard" when he was arrested on March 5, 2006 for criminal trespass.[10] (Doc. ¶ 45.) First, an arrest is not an eviction, and Gross's action had little to do with the landlord-tenant dispute raging between Boyd and Crouse. Second, a pretrial deprivation of liberty that is related to a criminal proceeding is addressed not through procedural due process, but the Fourth Amendment. See Robinson v.

---

[10] In the face of Gross's motion for summary judgment on the procedural due process claim, Crouse has failed to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of his right to relief. Pappas, 331 F. Supp. 2d at 315. Crouse does not even address this aspect of Gross's motion in his Rule 56 papers, an omission that by itself warrants summary judgment. See Anderson, 477 U.S. at 249-50 (explaining the nonmovant's burden to set forth specific facts, beyond those recited in the pleadings, demonstrating that there is a genuine factual issue for trial).

Clemons, 987 F. Supp. 2d 280, 285 (D. Del. 1998), aff'd, 193 F.3d 514 (3d Cir. 1999); see also Albright v. Oliver, 510 U.S. 266, 274-75 (1994) (precluding substantive due process claim when allegations complained of pretrial deprivation of liberty).  In fact, the Supreme Court has stated that the Fourth Amendment "was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of persons or property in criminal cases."  Gerstein v. Pugh, 420 U.S. 103, 125 n.27 (1975).  A procedural due process claim is therefore an inappropriate vehicle by which to seek vindication for a purportedly unlawful arrest; to the extent Crouse's March 5, 2006 arrest is actionable under § 1983, it is via the Fourth Amendment.  Accordingly, the court will grant Gross's motion for summary judgment on this claim.

### 2. **Clearly Established Rights**

Based on the court's findings that Crouse has established prima facie claims of unlawful arrest, unlawful imprisonment, and malicious prosecution, the court must ascertain whether Gross is entitled to qualified immunity.  Police officers enjoy qualified immunity unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Wright, 409 F.3d at 599-600.  The immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Blackhawk v. Pennsylvania, 381 F.3d 202, 215 (3d Cir. 2004) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  The qualified immunity inquiry requires an examination of whether, taking the evidence in the

light most favorable to the plaintiff, the defendant should have known that his or her actions contravened statutory or constitutional guarantees. Gruenke, 225 F.3d at 299-300. Application of immunity is appropriate unless the unlawfulness of the defendant's conduct is apparent based upon the law as it existed at the time of defendant's actions. Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citation omitted). When the issue of qualified immunity requires resolution of factual disputes, however, the court must defer consideration of immunity until the factual issues are resolved by a jury. Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006).

The court holds that a finding of qualified immunity is inappropriate at this juncture. Under Pennsylvania law, a tenant maintains the clear right to invite social guests into his or her home "so long as his obligations as a tenant under this [statute] are observed." See 68 PA. CONS. STAT. § 250.504-A. There is no dispute that Oswald was the rightful tenant of his apartment at the time of the arrest, and likewise no contention that he was violating his obligations as tenant by inviting Crouse into his residence. Furthermore, the facts as they are now developed suggest that Oswald conveyed to Gross that Crouse's presence within the residence was permissible, but that Gross was uninterested in the explanation. In short, Pennsylvania law explicitly allows a tenant to invite guests into his or her home, it appears that Oswald did so and informed Gross thereof, and that Gross nevertheless arrested Crouse as a trespasser.

The precise content of that which was conveyed to Gross at the scene, as well as the credibility of any explanation, is, of course, a question for the trier of fact. At this juncture, it is enough to say that Crouse's version of events is plausible and supported by record evidence, and that the contours of his rights were sufficiently clear under applicable Pennsylvania law. Qualified immunity is simply not warranted where an officer effectuates an arrest without probable cause when there is a statute on point that is permissive of the conduct in question. See McGreevy v. Stroup, 413 F.3d 359, 366 (3d Cir. 2005) (explaining that a right is 'clearly established' when, "in light of preexisting law, the unlawfulness of the official's conduct was reasonably and objectively apparent"). Accordingly, the Rule 56 motion asserting qualified immunity will be denied.

## B. Municipal Liability

In addition to his constitutional claims against Gross, Crouse alleges that South Lebanon Township (hereinafter "the Township") is liable for violations of his civil rights.[11] Municipalities and other local government entities may not be held liable under § 1983 for the acts of their employees under a theory of *respondeat superior* or vicarious liability. Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); see also McGreevy, 413 F.3d at 367. However, a municipality may be held liable if the plaintiff can "identify a municipal 'policy' or 'custom' that caused the

---

[11] Crouse's claim alleging municipal liability is otherwise known as a Monell claim because the doctrine was established by the Supreme Court's decision in Monell v. Department of Social Services, 436 U.S. 658 (1978).

plaintiff's injury." <u>Brown</u>, 520 U.S. at 403 (citing <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978)). A policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well-settled as to virtually constitute law." <u>Beck v. City of Pittsburgh</u>, 89 F.3d 966, 971 (3d Cir. 1996) (quoting <u>Andrews v. City of Phila.</u>, 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted)). A custom need not be "formally approved by an appropriate decisionmaker," but must be "so widespread as to have the force of law." <u>Natale v. Camden County Corr. Facility</u>, 318 F.3d 575, 584 (3d Cir. 2003) (quoting <u>Brown</u>, 520 U.S. at 404).

The Third Circuit Court of Appeals has identified three scenarios under which the actions of a municipal employee may be considered the consequence of a municipal policy or custom. In the first, "the appropriate officer or entity promulgates a generally applicable statement of policy [or custom] and the subsequent act complained of is simply an implementation of that policy." <u>Jiminez v. All Am. Rathskeller, Inc.</u>, 503 F.3d 247, 250 (3d Cir. 2007) (quoting <u>Natale</u>, 318 F.3d at 584). The second scenario arises when there is no pronounced policy or custom, but the policymaker's action violates federal law. <u>See</u> <u>id.</u> In the final scenario, "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." <u>Id.</u> (quoting <u>Natale</u>, 318 F.3d at 584).

Crouse's <u>Monell</u> claim focuses on the Township police department's practice of posting community information on a departmental clipboard for all officers to peruse.[12]  This information, typically submitted by local citizens, is initially reviewed by chief of the Township police, Michael Lesher ("Lesher").  Lesher described his review process as follows:

> Any item is put on [the clipboard] by me personally. . . . I vet what gets put on.  Megan's Law violators is a perfect example. . . . And also similar letters where someone doesn't want someone on their property, they have an attorney send a letter, we get a copy of it.  We post it.

(Doc. 21, Ex. 5 at 10.)  According to Lesher, the department does little to investigate the accuracy of the submitted information, and essentially "take[s] the document at face value."  (<u>See</u> <u>id.</u> at 10-11.)  In the matter *sub judice*, Boyd delivered a copy of his "eviction" letter to the Township police department, where it was posted on the office clipboard.  Furthermore, Gross acknowledges that he was familiar with the letter's contents prior to the incident on March 5, 2006.

Crouse asserts that the "Township's policy of permitting unverified information to be included on a clipboard which officers then rely upon to arrest individuals sets the stage for gross civil rights violations."  (Doc. 21 at 16.)  Although his argument is somewhat ambiguous, it appears to invoke the third of the custom/policy scenarios described above:  Crouse complains that the existing

---

[12] Police departments possess no legal existence apart from their chartering municipalities, rendering the policies, practices, and customs of a police department to be the policies, practices, and customs of the municipality.  <u>See</u> <u>Dull v. W. Manchester Twp. Police Dep't</u>, 604 F. Supp. 2d 739, 753 n.9 (M.D. Pa. 2009).

departmental practice of posting insufficiently scrutinized citizens' complaints was so likely to result in a false arrest that the Township can reasonably be said to have been deliberately indifferent to the prevention of such violations.[13]  See Jiminez, 503 F.3d at 250.

The court will reject this argument as unsupported by a sufficient evidentiary basis.  Even if the department's custom were *negligent*—an assumption which the court entertains primarily for the sake of argument—a Monell claim requires more than a "showing of simple or even heightened negligence."  Brown, 520 U.S. at 407. Rather, "a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference'

---

[13] Crouse also argues that the department's custom violates procedural due process, in that it leads to improper evictions such as purportedly occurred herein. (See Doc. 21 at 17.)  This argument assumes that the Township's action constitutes an "eviction," an assumption the court squarely rejects.  Procedural due process requirements dictate that "a deprivation of a property interest be 'preceded by notice and opportunity for hearing appropriate to the nature of the case.'"  Gikas v. Wash. Sch. Dist., 328 F.3d 731, 738 (3d Cir. 2003) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)).  Therefore, if the *Township* had wished to evict Crouse from the shop warehouse, there is no question that he would be entitled to notice and an opportunity to be heard.  However, Crouse was *arrested* by Gross, not evicted.  The government did not remove Crouse from his property and, in fact, Gross's primary rationale in arresting Crouse was Crouse's presence on property other than that which he rented.  The arrest and eviction in this case were wholly distinct incidents, and any recourse available to Crouse for the latter infraction lies exclusively against Boyd.  The Township did not deprive Crouse of a property interest; therefore, Crouse's claim that the Township infringed his right to procedural due process is rejected.  See Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006) (holding that municipal due process liability requires a violation of the plaintiff's constitutional right to due process).

as to its known or obvious consequences." Id.  Crouse offers no evidence of

deliberate indifference, nor has he established that the department's custom

actually created a systemic risk of false arrest.  Absent from the record is evidence

that the departmental custom led to other false arrests, that officers placed much

reliance on the information posted on the department clipboard, or even that Gross

himself relied on the information obtained from the clipboard to effectuate Crouse's

arrest.[14] Instead, Crouse offers generalities, asserting that "[w]hen any citizen with

a grudge against another can notify police of fabricated or exaggerated criminal

activity and the police post such information to be relied upon by other officers in

their duties, there is the potential of a constitutional violation as applied to the

---

[14] Crouse asserts that Gross "responds to 5 to 10 landlord tenant disputes each year," and that "Gross is not familiar with and has 'no clue' of the steps to evict a tenant under Pennsylvania's landlord-tenant law." (Doc. 21 at 14.) At first blush, this seems to implicate a failure to train argument. Viewing the totality of Crouse's Rule 56 papers, however, the court is convinced that he does not seriously pursue such an argument. For example, Crouse does not specifically allege that the Township inadequately trained its employees or that it acted with deliberate indifference when municipal employees violated the constitutional rights of the local citizenry. Even if he did proffer such allegations, his argument would fail in light of the applicable standard required of litigants seeking to prove a constitutional violation for failure to train.

In general, municipalities may be held liable for constitutional violations that result from inadequate training or employee supervision if the failure to train constitutes a custom of the municipality. See City of Canton v. Harris, 489 U.S. 378, 388 (1989). A township's failure to train its employees must "amount[] to deliberate indifference to the constitutional rights of persons with whom the police come in contact." Colburn v. Upper Darby Twp., 946 F.2d 1017, 1028 (3d Cir. 1991) (citing City of Canton, 489 U.S. at 388). Deliberate indifference is a difficult standard for a plaintiff to satisfy in the failure-to-train context. Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997). It requires that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999). Furthermore, "[a] need for training or other corrective action to avoid imminent deprivations of a constitutional right must be so apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measures." Strauss v. Walsh, No. Civ. A. 01-3625, 2002 WL 32341791, at *3 (E.D. Pa. Dec. 17, 2002); Garcia v. County of Bucks, 155 F. Supp. 2d 259, 268 (E.D. Pa. 2001). The custom of which Crouse complains—intra-department distribution of citizen complaints—is hardly indicative of a deliberately indifferent police department, and Crouse offers no evidence to meet the rigorous standard explicated by the Third Circuit in Carter. In fact, his brief opposing summary judgment does not even mention the words "deliberate indifference."

victim." (Doc. 21 at 16.) Crouse's claim is not self-evidently true, nor does it constitute the type of affirmative evidentiary showing incumbent upon a nonmovant at this stage of the litigation. See Anderson, 477 U.S. at 249-50. Such generalities certainly do not amount to deliberate indifference or establish highly reckless municipal practices. Summary judgment is warranted.

**IV.** **Conclusion**

Reasonable jurors viewing the evidence in the light most favorable to Crouse may conclude his March 5, 2006 arrest was without probable cause. Summary judgment on Crouse's claims for unlawful arrest, unlawful imprisonment, and malicious prosecution will therefore be denied. However, there is no genuine issue of material fact with respect to the Township's alleged constitutional liability, nor has Crouse demonstrated that his procedural due process rights were violated; summary judgment on these matters is therefore merited.

An appropriate order follows.


   S/ Christopher C. Conner   
CHRISTOPHER C. CONNER
United States District Judge


Dated:      October 22, 2009

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GEORGE THOMAS CROUSE,** | : | **CIVIL ACTION NO. 1:07-CV-1219** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **SOUTH LEBANON TOWNSHIP,** | : | |
| **JAMES GROSS, and GALEN BOYD,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 22nd day of October, 2009, upon consideration of defendants'

motion (Doc. 18) for summary judgment, and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

1.  The motion for summary judgment is GRANTED in part and DENIED
    in part as follows:

    a.  The motion is GRANTED with respect to (1) all 42 U.S.C. § 1983
        claims against South Lebanon Township, and (2) the claim
        levied against James Gross seeking redress under 42 U.S.C.
        § 1983 for a violation of procedural due process.

    b.  The motion is DENIED in all other respects.

2.  The Clerk of Court is instructed to defer entry of judgment until the
    conclusion of this case.

3.  A revised pretrial and trial schedule shall issue by future order of
    court.

S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge